## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | § | |
| JIM ISAAC SADDLER, JR., | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-09-0795 |
| | § | |
| RICK THALER, | § | |
| Respondent. | § | |

## MEMORANDUM AND OPINION

Petitioner, Jim Isaac Saddler, Jr., seeks habeas corpus relief under 28 U.S.C. § 2254,

challenging a conviction in the 359th Judicial District Court of Montgomery County, Texas.

Respondent filed a motion for summary judgment, (Docket Entry No. 14), and copies of the state

court record. (Docket Entry No. 11). Saddler has filed his response. (Docket Entry No. 22). After

consideration of the motion and response, the record, and applicable authorities, the court grants

respondent's motion. The reasons for this ruling are stated below.

## I.    Background

The indictment prepared on January 17, 2006, charged Saddler as follows:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF
> TEXAS: THE GRAND JURY for the County of Montgomery, State
> of Texas, duly selected, empaneled, sworn, charged and organized as
> such by the 9th Judicial District Court for said County, upon their
> oaths present in and to said court that Jim Issac Saddler, hereinafter
> styled Defendant, on or about April 11, 2005, and before the
> presentment of this indictment, in the County and State aforesaid, did
> then and there intentionally and knowingly possess a controlled
> substance listed in Penalty Group 1 of the Texas Controlled
> Substances Act, namely, cocaine, in an amount of 4 grams or more
> but less than 200 grams, including adulterants and/or dilutants, . . .
> Against the Peace and Dignity of the State.

*Ex parte Saddler,* Application No. 18,620-11 at 98-99.

A jury found Saddler guilty of the felony offense of possession of a controlled substance (cocaine) - in an amount weighing more than 4 grams, but less than 200 grams. (Cause Number 06-01-00493-CR). The indictment also alleged four enhancement paragraphs relating to the following convictions:

(a) a felony conviction on March 2, 1990, in the 359th District Court of Montgomery County, Texas, in Cause No. 90-03-00158-CR for the offense of burglary of a habitation;

(b) a felony conviction on June 28, 1985, in the 221st District Court of Montgomery County, Texas, in Cause No. 18,206 for the offense of possession of a controlled substance;

(c) a felony conviction on December 4, 1981, in the 221st District Court of Montgomery County, Texas, in Cause No. 15,379 for the offense of burglary of a building; and

(d) a felony conviction on January 7, 1980, in the 221st District Court of Montgomery County, Texas, in Cause No. 13,508 for the offense of unlawful carrying of a weapon on licensed premises. *Ex parte Saddler,* Application No. 18,620-11 at 98-99.

Saddler pleaded true to all four enhancement paragraphs. On April 11, 2007, the court sentenced Saddler to forty years imprisonment. On appeal, Saddler's counsel filed a brief that presented counsel's professional evaluation of the record and concluded that the appeal was frivolous. *See Anders v. California,* 386 U.S. 738 (1967). Stating that it agreed with appellate counsel's conclusion that no arguable issues supported an appeal, the Ninth Court of Appeals of Texas affirmed Saddler's conviction on June 11, 2008. *Saddler v. State*, No. 09-07-228, 2008 WL 2368887 (Tex. App. -- Beaumont 2008, no pet.)(not designated for publication). The appellate court advised Saddler that he could challenge its decision by filing a petition for discretionary review. Saddler did not file a petition for discretionary review in the Texas Court of Criminal Appeals.

Saddler filed an application for state habeas corpus relief on October 24, 2008, which the Texas Court of Criminal Appeals denied without written order, on findings of the trial court, without a hearing on February 4, 2009. *Ex parte Saddler,* Application No. 18,620-11 at cover.

On March 17, 2009, this court received Saddler's federal petition.  Saddler challenges the validity of his conviction on the following grounds:

(1) The State breached its promise not to prosecute Saddler for possession of a controlled substance by later prosecuting Saddler for the same offense;

(2) Trial counsel, Earl L. Pryor, rendered ineffective assistance by:

     (a) failing to investigate,

     (b) failing to enter a "plea of Double Jeopardy,"

     (c) concealing evidence that was favorable to the defense,

     (d) failing "to [preserve] Defendant's rights of error by failing to object,"

     (e) operating under a conflict of interest by helping the State conceal evidence of the agreement not to prosecute;

(3) The State violated the prohibition against double jeopardy by arresting him, releasing him, rearresting him, and prosecuting him despite an earlier final acquittal; and

(4) The trial court lacked jurisdiction to enter the judgment and sentence because the earlier acquittal was never revoked.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 7-8).

## II.    The Applicable Legal Standards

This court reviews Saddler's petition for writ of habeas corpus under the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28

U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).

Sections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an adjudication on the merits. An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000). A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under section 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Saddler is proceeding *pro se*. A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Saddler's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

### III.    The Claim Based on a Breach of Agreement

Saddler explains that he was arrested and charged with possession of a controlled substance. He was held in the Montgomery County Jail for nineteen days, from April 11 to April 29, 2005. He states that he was then called out of his cell and told that he was free to go based on the decision made by Michael A. McDougal, the Appointed District Attorney of Montgomery County.  Saddler claims that McDougal had the power to designate prosecutors and intake personnel to act on his behalf.  He designated Trisha Willett to convey a promise to the Montgomery County Jail Officials to release Saddler.  The Montgomery Jail Officials verified the facsimile before releasing Saddler.

> The date that the promise was made was April 29th. 2005, and such a promise did not become binding until, the Jail Officials verified and acted in reliance to such promise, which cause the Petitioner to also act in reliance, by being released.  The Petitioner was released as promised, charges was finally dismissed, which amounts to a promise of immunity and an acquittal, and it was with in the Prosecutorial Discretion to do so . . .

(Docket Entry No. 1, Federal Petition, Attachment 1, pp. 2-3).

Saddler alleges that the State made a promise, and it became an agreement once he was released from jail.  Saddler states that he was released from custody on charges of possession of a controlled substance.  He states that this promise was given to him in writing upon his release. Saddler asserts that he was misled to believe that he had been granted immunity and/or acquittal upon his release from jail.  He argues that the written promise releasing him from jail was final.

One year later, on May 6, 2006, Saddler complains that he was arrested for the very same offense.  He was charged with failure to appear and/or bond forfeiture.  Saddler explains that he was subsequently acquitted of bond forfeiture because the court decided that Saddler was not out on bond

and had not failed to appear.  He maintains that he was not charged with failure to appear because the prosecutor had actually granted Saddler immunity from further prosecution.

Saddler refers to a facsimile from Trisha Willett, an assistant in the intake department of the Montgomery County District Attorney's Office.  The facsimile was addressed to the Montgomery County Jail.  The facsimile stated, in part: "Our office will not be pursuing charges against the following Defendant: Saddler, Jim Issack[sic]  Pin No. 110096.  Please released [sic] the Defendant as to the following charges only: PCS. Date of Arrest: 4/11/05 Date of Offense: 4/11/05  Thank you[.]". *Ex parte Saddler,* Application No. 18,620-11 at 27.

Nothing in the text of this facsimile suggests that Saddler had been acquitted of all charges. Instead, the document indicates that the State would not prosecute Saddler for the offense of possession of a controlled substance at that time.  Contrary to Saddler's assertions, the document does not proclaim that the State will never prosecute Saddler for the same offense in the future.  The document does not purport to memorialize an agreement between Saddler and the State.  The facsimile only contained instructions to release Saddler from the custody of the Montgomery County Jail.

Saddler's claim that the State agreed not to prosecute him for the offense of possession of a controlled substance, is conclusory.  In *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983), the Fifth Circuit held that conclusory allegations are an inadequate basis for federal habeas relief, stating that "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Id.*

The state habeas court found:

9. Based on the record of the trial, Applicant was the only person in Glen Venson's house who had in his hand a plastic bag containing part of a crack cocaine cookie when Officer Keleman approached the house.

10. Based on the record of the trial, Applicant admitted to Officer Keleman that he knew he had cocaine in his possession.

11. Based on the record of the trial, Mr. Venson testified that Applicant brought the cocaine cookie to his house.

12. The basis for Applicant's Grounds for Relief One, Three, Four, Five, and Six is an alleged agreement not to prosecute.

13. Applicant presents as evidence of the alleged agreement not to prosecute an unsigned facsimile cover sheet sent by an intake assistant at the District Attorney's Office to the jail stating, "Our office will not be pursuing charges."

14. The facsimile cover sheet does not constitute a contract or agreement of the District Attorney not to prosecute.

15. Applicant does not plead in his application what true facts he told investigators or officials of the District Attorney's Office in exchange for the agreement not to prosecute.

16. Based on the record, Applicant did not present to the trial court for a ruling his motion to dismiss because of an alleged agreement not to prosecute.

17. Applicant fails to prove by a preponderance of the evidence an agreement not to prosecute.

18. Based on the credible affidavit of Barbara Morgan, office manager for the District Attorney's Office, the District Attorney's Office has never employed an assistant district attorney named Botley.

19. Based on the record, Applicant did not present a motion to dismiss because of selective prosecution to the trial court.

20. Applicant does not plead and prove facts showing that any other person in the house had in their hand a plastic bag containing a crack cocaine cookie.

*Ex parte Saddler,* Application No. 18,620-11 at 74-75 (citations omitted).

The Court of Criminal Appeals expressly based its denial of habeas relief on these findings. These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g).   Saddler has not produced clear and convincing evidence to rebut these findings.

The state court's decision was not contrary to clearly established federal law.  Saddler is not entitled to habeas relief.  28 U.S.C. § 2254(d)(1).

## IV.   The Claim of Ineffective Assistance of Trial Counsel

To establish an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that he was actually prejudiced as a result.  *Strickland v. Washington*, 466 U.S. 668, 68 (1984).  Whether counsel's performance was deficient is determined by an objective standard of reasonableness. *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999). "[S]crutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir.)("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."), *cert. denied*, 537 U.S. 1018 (2002); *Lockett v. Anderson*, 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So

long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Jones*, 287 F.3d at 331. To overcome the deference given to informed strategic decisions, a petitioner must show that his counsel "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999) ("*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose.").

Even if a petitioner establishes that his counsel's performance was deficient, he must also establish that "prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). A petitioner must show that the prejudice made the trial outcome "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364 (1993)).

The state habeas court found that:

> 8.      The Court is familiar with the effective performance of trial counsel, Earl L. Pryor, who has long practiced in the courts of Montgomery County and is qualified for appointment as trial counsel in criminal cases.
> . . .
> *Conclusions of Law*
> . . .

> 2. Because he failed to prove the existence of an agreement not to prosecute, Applicant fails to prove his claims of breach of agreement, vindictive prosecution, ineffective assistance of counsel, double jeopardy, and lack of jurisdiction.

*Ex parte Saddler,* Application No. 18,620-11 at 73-75.

Under AEDPA, this court must give proper deference to the state court's determination that trial counsel rendered effective assistance. *See Ladd v. Cockrell*, 311 F.3d 349, 351 (5th Cir. 2002). Because the state court properly identified *Strickland* as the governing legal principle, the "unreasonable application" prong of section 2254(d)(1) provides the standard that governs this court's review of the state court's decision on Saddler's ineffective assistance claims. *Bell v. Cone*, 535 U.S. 685, 694-695 (2002). This court must determine whether the state court's application of *Strickland* was objectively unreasonable. *Id.*; *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1104 (2003). Under section 2254(d)(1), "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal*, 286 F.3d at 236). "The federal-habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).

Saddler claims that he told counsel about the facsimile that purportedly promised not to prosecute Saddler for the offense of possession of a controlled substance. He complains that counsel failed to investigate the State's promise of immunity and acquittal. Counsel failed to object to the

prosecutor's withholding of this favorable evidence.  Saddler further contends that counsel helped the prosecutor by concealing evidence of the State's promise not to prosecute.

In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  In general, scrutiny of an attorney's performance is highly deferential, and reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. *Id.* at 689-90.

Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable.  *Strickland*, at 690-91.  Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it. *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir. 1983), *cert. denied*, 464 U.S. 1063 (1984). Tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance. *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir.), *cert. denied,* 522 U.S. 944 (1997).

In the case at bar, counsel was aware of Saddler's earlier release from custody.   The following exchange took place after the court imposed sentence:

> MR. PRYOR:  Judge, I was just wondering – . . .  But there is just one matter, that if we could maybe clear it up after the judgment and that deals with the bond forfeiture that Mr. Saddler had in this court. And the main reason I want to clear it up before he go[sic] to TDC, because if you go to TDC with a bond forfeiture, it has the effect of an escape.  Hopefully, I can get the record to show where Mr. Sadler[sic] was released from jail, he -- I think it came up once before, but he was actually released from jail on this charge and then they refiled.  Because it showed on your records as a bond forfeiture.

I'll get with the State, but that's the only thing that I could think of that we wanted to clear up was that bond forfeiture that we had on his record where he was released from the jail, not because he posted bond, because the sheriff released him.

THE COURT: I have a 5-22-06 that he failed to appear. That was -- that's what you are talking about, that date, May 22?

MR. PRYOR: '06? I'll look it up, Judge, but yes, I think I'll have the papers in and I do have copies of that stuff. All we're saying is that -- and I think I know who his attorney was at that time, but it did come back that he was released from the jail and I'll see if I can get the jail's record to show that. And that's the only thing we want to clear up.

THE COURT: Okay.

MR. PRYOR: Is there anything?

THE DEFENDANT: No. He never gave me notice that I was supposed to be in trial.

THE COURT: All right. Sounds like Mr. Pryor is going to do some work on that and then share that with the State and we'll go from there.

MR. SHIRLEY: You probably need to talk to either myself or Mike Valdez and then he can get with Peggy also. You can probably get a hold of me, but they do a lot of bond forfeiture stuff. We'll work with you on that.

MR. PRYOR: Just so that doesn't go there with that, Judge. He can never be a trustee if we don't clear that up.

MR. SHIRLEY: Okay.

THE COURT: Good luck to you, sir. Anything further, Mr. Shirley?

MR. SHIRLEY: Nothing further from the State, Your Honor.

THE COURT: Anything further from defense?

MR. PRYOR: No, Your Honor.

THE COURT:  Thank you both for your help.  We're in recess.

(Reporter's Record, Vol. IV, pp. 7-9).

Counsel advised the court that Saddler had been released from the Montgomery County Jail and later indicted on the same offense.  Counsel sought to correct the record to reflect that Saddler had been released and that he had not forfeited his bond.  Counsel knew that Saddler had been released, and he presumably knew that the release was not the equivalent of an acquittal or promise of immunity.  Counsel knew that Saddler had not previously been tried for the offense of possession of a controlled substance stemming from Saddler's arrest on April 11, 2005.  Based on his knowledge of the law and facts, counsel made a tactical decision not to argue that the State was barred from prosecuting Saddler for the same offense.  Any argument that double jeopardy precluded a second prosecution of Saddler would have been frivolous.  Counsel cannot be deficient for failing to press a frivolous point.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson*, 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999)(citing *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995)).

The state habeas court found that counsel was qualified and had tried several criminal cases in the courts of Montgomery County.  Success on his ineffective assistance claims was contingent on his ability to establish that the State had promised not to prosecute him.  Saddler's ineffective assistance claims related to the State's purported promise not to prosecute him.  The court concluded that because Saddler had failed to prove the existence of an agreement not to prosecute, he had also failed to establish his ineffective assistance claim.  The Court of Criminal Appeals expressly based its denial of habeas relief on this finding.  These credibility determinations are entitled to a

presumption of correctness.  28 U.S.C. § 2254(e)(1); *Moore v. Johnson,* 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g).  Saddler has not produced clear and convincing evidence to rebut this finding.

The state court's decision was not contrary to clearly established federal law.  Saddler is not entitled to habeas relief.  28 U.S.C. § 2254(d)(1).

## V.    The Claim Based on a Violation of the Double Jeopardy Clause

Saddler argues that the previous proceeding became final upon Saddler's release from the Montgomery County Jail.  He was given a document setting out in plain, clear, mandatory wording that the District Attorney's Office would not be seeking further prosecution and had released Saddler on charges of possession of a controlled substance.  Saddler argues that the State violated the prohibition against double jeopardy by arresting him on the same charges after he had already served nineteen days in jail and had been formally released from custody.  Saddler argues that the double jeopardy clause prohibits courts from punishing Saddler twice for the same offense.  Saddler claims that his first punishment of nineteen days in jail and subsequent release had the constitutional finality of an acquittal.  Saddler states that he had a legitimate expectation of finality in the first original sentence.

The Double Jeopardy Clause of the Fifth Amendment, which was made applicable to the states through the Fourteenth Amendment in *Benton v. Maryland,* 395 U.S. 784, 794 (1969), provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.   Historically, "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States,* 355 U.S. 184, 187 (1957).  The Supreme Court has recognized that, once a defendant has been placed in jeopardy

in the first instance, the Fifth Amendment Double Jeopardy Clause protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *See, e.g., North Carolina v. Pearce,* 395 U.S. 711, 717 (1969); *Doyle v. Johnson,* 235 F.3d 956, 958 (5th Cir. 2000). The Supreme Court has explained the purpose of the Double Jeopardy Clause.

> Although articulated in different ways by this Court, the purposes of, and the policies which animate, the Double Jeopardy Clause in this context are clear. 'The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'

*Serfass v. United States,* 420 U.S. 377 (1975), *quoting Green v. United States,* 355 U.S. 184 (1957).

Saddler insists that his trial following his initial release constituted a successive prosecution which violated the Fifth Amendment. Saddler argues that jeopardy attached when he was released from the custody of the Montgomery County Jail. Saddler contends that his re-indictment placed him twice in jeopardy for the same crime. (Docket Entry No. 1, p. 7). However, jeopardy does not attach in a criminal proceeding until the jury has been empaneled and sworn. *United States v. Milhim,* 702 F.2d 522, 523-524 (5th Cir. 1983), citing *Crist v. Bretz,* 437 U.S. 28 (1978); *United States v. Futch,* 637 F.2d 386, 389 (5th Cir. 1981). The subsequent indictment of Saddler does not invoke the considerations that underlie double-jeopardy jurisprudence because no jury had been impaneled to consider the charge in the first indictment.

Once jeopardy has attached, "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson v. United States,* 468 U.S. 317, 325 (1984). In other words, "[i]n the context of a successive prosecution, a defendant's double jeopardy concerns arise only after original jeopardy attaches and terminates." *United States v. Garcia,* 567 F.3d 721, 730 (5th Cir. 2009) (citing *Richardson,* 468 U.S. at 325). The Fifth Circuit has observed that there are only three possible "jeopardy terminating events" that would bar a retrial: "(1) an acquittal, (2) a trial court determination of insufficiency leading to a directed verdict of acquittal, and (3) an unreversed determination on direct appeal that there was insufficient evidence to support the conviction." *Garcia,* 567 F.3d at 730 (quoting *Vanderbilt v. Collins,* 994 F.2d 189, 195 (5th Cir. 1993)).

Here, Saddler maintains that the facsimile ordering his release from the custody of the Montgomery County Jail was equivalent to an acquittal. Saddler has failed to demonstrate that jeopardy ever attached. He further fails to show that a jeopardy terminating event occurred prior to the trial in his case. Accordingly, based on this record, Saddler does not demonstrate his conviction for possession of a controlled substance following his initial release from the Montgomery County Jail, violated the prohibition against successive prosecutions found in the Double Jeopardy Clause.

The State habeas court made the following conclusion of law: "2. Because he failed to prove the existence of an agreement not to prosecute, Applicant fails to prove his claims of breach of agreement, vindictive prosecution, ineffective assistance of counsel, double jeopardy, and lack of jurisdiction." *Ex parte Saddler,* Application No. 18,620-11 at 75.

The Texas Court of Criminal Appeals also denied relief on Saddler's claim for post-conviction relief. On habeas review, the federal courts are bound by the credibility choices made

by the state court. *Hogue v. Johnson,* 131 F.3d 466, 505 (5th Cir. 1997). As a federal court in a habeas proceeding, this court is required to grant a presumption of correctness to a state court's explicit and implicit findings of fact if supported by the record. *Loyd v. Smith,* 899 F.2d 1416, 1425 (5th Cir. 1990).

Saddler fails to show that, by rejecting this claim, the state habeas corpus court's decision was contrary to or involved an unreasonable application of clearly established federal law as decided by the United States Supreme Court. Saddler is not entitled to relief on this issue. Saddler's claim for habeas relief based on double jeopardy lacks merit, and relief cannot be granted. 28 U.S.C. § 2254(d)(1).

Saddler is not entitled to habeas relief on this claim.

## VI. The Claim of a Void Indictment

Saddler argues that the indictment for the offense of possession of a controlled substance was void because the State had previously agreed not to prosecute him for that offense. Saddler maintains that the trial court lacked jurisdiction to impose a sentence. Because the convicting trial court lacked jurisdiction to determine the outcome, Saddler maintains that everything that took place after the rearrest was void because there was nothing in the records that shows that such proceeding had been revoked.

Saddler's lack of jurisdiction claim is predicated on his claim that the State agreed not to prosecute him. Because this court has previously considered and rejected Saddler's claim that the State agreed not to prosecute him when it released him from the Montgomery County Jail, Saddler's lack of jurisdiction claim also fails.

Alternatively, the court finds that the sufficiency of a state indictment is not a basis for federal habeas relief unless the indictment is so defective that it deprives the state court of jurisdiction. *Yohey v. Collins,* 985 F.2d 222, 228 (5th Cir. 1993). A claim of insufficiency of the indictment provides a basis for federal habeas relief only when the indictment is so defective that under no circumstances could a valid state conviction result from proving the facts alleged. *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988). Sufficiency is determined by looking to the law of the state that issued the indictment. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

The question of whether a defective state indictment nonetheless confers jurisdiction on a state trial court is a matter of state law. *Lavernia v. Lynaugh,* 845 F.2d 493 (5th Cir. 1988); *Bueno v. Beto,* 458 F.2d 457 (5th Cir.), *cert. denied,* 409 U.S. 884 (1972). A 1985 amendment to the Texas Constitution provides that the "presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Tex. Const. art. V, § 12(b). This amendment applies to all indictments returned after September 1, 1985. *Id.* The Fifth Circuit has held that "due deference must be given to the state court's interpretation of the 1985 amendment, and that alleged defects in an indictment do not deprive the state trial courts of jurisdiction." *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir.), *cert. denied,* 513 U.S. 854 (1994).

The grand jury for the 359th District Court of Montgomery County, Texas, returned the indictment against Saddler on January 17, 2006. *Ex parte Saddler,* Application No. 18,620-11 at 98-99. The 1985 amendment applies, and this court accords due deference to the state court's interpretation of the 1985 amendment. This court concludes that the indictment did not deprive the state trial court of jurisdiction.

Saddler raised his void indictment issue in the state court. The state habeas court found that because Saddler had failed to prove the existence of an agreement not to prosecute, he therefore failed to prove his claim based on a lack of jurisdiction. *Ex parte Saddler,* Application No. 18,620-11 at 75. The Texas Court of Criminal Appeals denied Saddler's habeas application without a written order, on findings of the trial court. *Id.* at cover.

The Fifth Circuit has noted that "the Texas Court of Criminal Appeals in declining to grant relief has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose." *McKay*, 12 F.3d at 68 (citing *Alexander v. McCotter*, 775 F.2d at 599). Saddler presented his defective indictment claim to the highest state court. *Ex parte Saddler,* Application No. 18,620-11 at 98-99. That court necessarily found that the trial court had jurisdiction over the case. *McKay,* 12 F.3d at 68. This federal court finds no grounds for granting habeas relief on the basis that the indictment was insufficient under Texas law. *Millard v. Lynaugh*, 810 F.2d 1403 (5th Cir.), *cert. denied,* 484 U.S. 838 (1987); *McKay v. Collins*, 12 F.3d at 69.

Saddler is not entitled to habeas relief on this claim.

## VII.   Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 14), is GRANTED. Saddler's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Saddler's motion for the appointment of counsel, (Docket Entry No. 24), is denied as moot. Any remaining pending motions are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard,

an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). Where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484.

This court denies Saddler's petition after careful consideration of the merits of his constitutional claims. This court denies a COA because Saddler has not made the necessary showing for issuance. Accordingly, a certificate of appealability is DENIED.

SIGNED at Houston, Texas, on _____, 2010.


_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE

O:\RAO\VDG\2009\09-0795.c01.wpd

21